IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CARMELLE JAMISON and TERRELL
GIBSON, as Next Friend of E.J., a Minor

     Plaintiffs,

v.

GREENVILLE PUBLIC SCHOOL
DISTRICT,

     Defendant.

CIVIL ACTION NO. 4:24-CV-103-GHD-JMV

## COMPLAINT FOR DECLARATORY RELIEF, COMPENSATORY EDUCATIONAL SERVICES, AND DAMAGES

E.J., by and through her parents and next friends, Carmelle Jamison and Terrell Gibson ("Plaintiffs"), hereby files this Complaint for declaratory relief, compensatory educational services, and damages against the Greenville Public School District ("the District"), and in support thereof alleges as follows:

## I.    INTRODUCTION

1.    Plaintiff E.J. is an eleven-year-old child who loves school, math, art, gymnastics, and cheer. E.J. wants to do well in school—she has goals of making all As and Bs so that she can be included on the honor roll. But the District has failed to provide her the necessary services and supports she needs to realize her goals and feel successful. E.J. was diagnosed with dyslexia in March 2020, and the District's refusal to provide necessary interventions since her diagnosis has significantly impacted her ability to realize her full academic potential. She is falling behind her peers, and often expresses frustration and sadness at school and at home as a result of her struggles to read and decode her assignments.

2.     This is an action for declaratory relief, injunctive relief, and damages, wherein Plaintiff seeks a declaration from this Court that the Greenville Public School District ("the District") violated the Individuals with Disabilities Education Act ("IDEA"), as well as Section 504 of the Rehabilitation Act ("Section 504") and Title II of the Americans with Disabilities Act ("ADA").

3.     This action is an appeal from a dismissal of Plaintiff's due process complaint. It is brought pursuant to 20 U.S.C. § 1415(i)(2)-(3) of the IDEA. The claims in the due process complaint arose out of the District's violations of the IDEA, including its failures to offer a Free Appropriate Public Education ("FAPE") to E.J. through an Individual Education Program (IEP) and to identify and evaluate E.J. as a student with a disability in violation of the child find requirement, 20 U.S.C. § 1412(a)(3)(A).

4.     This action brings additional claims under Section 504 and the ADA. Under Section 504 and Title II of the ADA, E.J. is a qualified individual with a disability as defined by 29 U.S.C. § 705(2) and 42 U.S.C. § 12131(2). The District is a public entity that receives federal financial assistance in the operation of its programs or activities as defined by 29 U.S.C. § 794(b)(2)(B) and 42 U.S.C. § 12131(1). Under both statutes, the District is prohibited from discriminating against students based on their disabilities. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 12132. By denying E.J. appropriate accommodations, the District has denied E.J. her right to meaningfully access an appropriate education based on her disability.

5.     Section 504 and the ADA also prohibit retaliation against individuals seeking to enforce their own or others' rights under the statutes. The District violated this prohibition on retaliation by taking adverse actions against E.J.'s parents as a result of their advocating for proper services and accommodations for E.J. 29 U.S.C. § 794, 34 C.FR. § 104.61; 42 U.S.C. § 12203.

6.      Finally, this action bring state law claims for violations of Mississippi Code Annotated Sections 37-173-16(1) and 37-173-15(1)(d). The District failed to evaluate E.J. for special education services or a 504 Plan after she failed her dyslexia screener as mandated by state law. Miss. Code Ann. § 37-173-16(1).  They further failed to provide any services or accommodations in the form of evidence-based interventions and strategies to address her dyslexia and ensure she would be able to advance academically. *Id.* The District also failed to accept the subsequent dyslexia evaluation following the failed screener in order to determine if E.J. was eligible for a public or private dyslexia therapy program. Miss. Code Ann. § 37-173-15(d).

7.      Plaintiffs seeks several forms of relief, including an order vacating the Hearing Officer's dismissal of her claims, declaratory relief, compensatory educational services, the development of an appropriate IEP, prospective educational services, monetary damages, punitive damages, and attorneys' fees.

## II.    PARTIES

8.      Plaintiff E.J. is an eleven-year-old who is enrolled in the District. E.J. has been diagnosed with dyslexia, a specific learning disability characterized by difficulties in reading and writing. E.J. is a qualifying individual with a disability as defined by the IDEA, ADA, and Section 504. Carmelle Jamison is the biological mother of E.J. Terrell Gibson is the stepfather of E.J. Under the IDEA, both Jamison and Gibson are "parents" as defined by 34 C.F.R. § 300.30(a)(1) and (3)-(4), respectively. E.J. and her parents reside together in Greenville, Washington County, Mississippi.

9.      Defendant, Greenville Public School District, is a public school system and a political subdivision of the State of Mississippi. It is a local educational agency under the IDEA, a public entity under the ADA, and receives federal financial assistance under Section 504. The

District is located within Washington County, Mississippi. The District may be served with process through its Superintendent, Dr. Janice Monroe, at 412 South Main Street, Greenville, Mississippi, 38701.

## III.  JURISDICTION AND VENUE

10.     This action arises under the IDEA, 20 U.S.C. § 1415(i)(2), (3), and (e)(2)(F)(iii), as well as Title II of the ADA, 42 U.S.C. § 12133, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(a)(2).

11.     This Court has supplemental jurisdiction to adjudicate any state law claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. § 1367.

12.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     The District is found within the Northern District of Mississippi, Greenville Division, and therefore venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### A.  EXHAUSTION OF REMEDIES

14.     Plaintiffs have exhausted all administrative remedies to their claims pursuant to 20 U.S.C. § 1415(l).

15.     On November 20, 2023, E.J.'s parents, Ms. Jamison and Mr. Gibson, (collectively "Parents") brought an administrative due process complaint on behalf of themselves and E.J. against the District before the Mississippi Department of Education, Office of Special Education, pursuant to 20 U.S.C. § 1415(b)(6) of the IDEA, Case Number: D11202023-23 (hereinafter "2023 due process complaint").

16.     On December 20, 2023, the District and Parents reached a mediation agreement ("Agreement"), and the Parents voluntarily withdrew the 2023 due process complaint.

4

17. On March 18, 2024, E.J.'s Parents brought a second administrative due process complaint against the District (hereinafter "2024 due process complaint"). The 2024 due process complaint was properly served on the District, and an administrative hearing officer ("HO") was appointed to the case, (Case Number: D03182024-24).

18. The 2024 due process complaint alleged that the District violated E.J.'s rights under the IDEA with respect to appropriate services, appropriately trained staff, the development of E.J.'s IEP, parental participation, provisions on child identification, evaluation, and educational placement, and denied E.J. a Free Appropriate Public Education ("FAPE"). The due process complaint also alleged that the District violated other federal and state laws regarding discrimination and breeched the previous Agreement reached by the parties.

19. On July 18, 2024, the District submitted a motion to dismiss Mr. Gibson from the due process complaint on the grounds that E.J.'s stepfather, Mr. Gibson, lacked standing to prosecute the case. The motion also sought to limit the scope of his participation in the hearing.

20. On July 19, 2024, the HO denied the District's motion to dismiss, reasoning that Ms. Jamison, as the biological mother, had standing to bring the case, and Mr. Gibson, as E.J.'s stepfather, could still participate in the hearing under the IDEA.

21. On July 30, 2024, the District submitted a motion for reconsideration on its Motion to Dismiss Mr. Gibson as a party, and the HO denied the District's motion for reconsideration.

22. On July 31, 2024, the District gave notice to the HO that it had filed a Petition for Preliminary and Permanent Injunctive Relief to prevent the enforcement of a subpoena issued to the school district's legal counsel on July 30, 2024, in Washington County Chancery Court.

23. In its July 30 petition, the District requested a stay of the hearing.

24. The due process hearing was set for August 14, 2024.

25.     On July 31, 2024, Plaintiff also requested a stay of the hearing.

26.     On August 5, 2024, the HO issued a Final Decision and Order ruling that the 2024 due process complaint is "DIMISSED WITH PREJUDICE," attached hereto as **Exhibit A**.

27.     The HO's Decision and Order fails to make specific findings of fact, conclusions of law, or provide specific reasoning for its ruling.

28.     The Mississippi Department of Education, as a state educational agency, does not provide a state administrative appeal process to review a hearing officer's decision under 20 U.S.C. § 1415(g).

29.      Having exhausted all administrative remedies, this Court has jurisdiction to hear Plaintiff's claims pursuant to 20 U.S.C. § 1415(i)(2). With this jurisdiction, Congress mandated that district courts "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* at § 1415(i)(2)(C).

## IV.     STATEMENT OF FACTS

30.     E.J. is an eleven-year-old female who first enrolled in the District at age three when she began attending Head Start.

31.     Carmelle Jamison is E.J.'s biological mother.

32.     Terrell Gibson is E.J.'s stepfather.

33.     Since approximately 2020, Mr. Gibson, Ms. Jamison, and E.J. have been living together. In that time, Mr. Gibson has been supporting and promoting E.J.'s education and welfare, and otherwise acting in the place of E.J.'s biological father.

34. When E.J. was in Head Start, she began showing signs of dyslexia, including writing the letters of the alphabet backwards. When E.J. began first grade, she failed her academic classes and demonstrated significant deficits in basic reading skills.

35. On April 8, 2019 and September 23, 2019, the District conducted two dyslexia screeners on E.J., and she failed both screeners, indicating that E.J. was at-risk for dyslexia.

36. Despite E.J. failing both dyslexia screeners and being retained in first grade, the District failed to refer E.J. for an evaluation to determine eligibility for special education services.

37. On March 3, 2020, Ms. Jamison had E.J. privately evaluated by Children's of Mississippi, University of Mississippi Medical Center ("UMMC").

38. The UMMC evaluation indicated that E.J. is within the average range of intelligence.

39. As for academic skills, the UMMC evaluation indicated that E.J.'s early reading skills, reading comprehension, alphabetic writing fluency, word reading, and spelling "were significantly depressed and consistent with a diagnosis of dyslexia."

40. On September 28, 2020, Parents decided to withdraw E.J. from the District and enroll her in a private school; E.J. was in first grade at the time.

41. E.J. also struggled to make progress at the private school, as the private school was not equipped to address E.J.'s disability.

42. On September 13, 2023, E.J. returned to Boyd Elementary School in the District for fourth grade.

The District's Evaluation of E.J.

43.     Shortly after E.J. returned to the District, Parents requested that the District evaluate E.J. for special education services and provided a copy of the District with the UMMC evaluation in support of their request.

44.     The District refused to consider the UMMC evaluation as part of E.J.'s evaluation process, reasoning that the evaluation was "too old."

45.     The District's psychologist stated the she did not think E.J. had dyslexia and that she just needed more reading time and better organization.

46.     On September 15, 2023, the District completed a speech/language assessment on E.J., which showed that E.J. scored below average in the areas of oral expression and listening comprehension.

47.     On or about September 20, 2024, Dr. Linda Washington, the District's psychologist, stated to Parents that she disagreed with E.J.'s dyslexia diagnosis and believed that E.J. just needed more time to complete assignments and better organizational strategies.

48.     On September 22, 2023, Parents reached out to the Mississippi Department of Education's Parent Engagement Director over their concerns that the District would not consider the UMMC evaluation and E.J.'s dyslexia diagnosis. The Director assured Parents that the District would consider E.J.'s dyslexia diagnosis during its evaluation process.

49.     On October 11, 2023, the District completed an academic assessment on E.J., which showed that according to E.J.'s composite score on the Dyslexia Index, E.J. is in the "Very High" range for risk of dyslexia.

50.     On October 25, 2023, the District completed a social emotional assessment based on prior behavioral data, which showed that E.J.'s academic deficits were due to Attention-deficit/hyperactivity disorder ("ADHD").

51.     None of the reports from the District's assessments mentioned that E.J. had been previously diagnosed with dyslexia. The school psychologist only administered the Connors test to E.J., but she did not conduct a complete psychological evaluation that would include an analysis of cognitive strengths and weaknesses.

52.     On November 3, 2023, the District and Parents met to go over E.J.'s evaluation results.

53.     The Multi-disciplinary Evaluation Team determined that E.J. was eligible to receive special education and related services under the eligibility category of Specific Learning Disability ("SLD"). E.J. was in the fourth grade.

The 2023 Due Process Complaint

54.     On November 20, 2023, Parents filed their first administrative due process complaint against the District for failing to consider E.J.'s dyslexia diagnosis when determining her eligibility and her special education services, violating provisions on child identification, evaluation, and educational placement, and denying E.J. a Free Appropriate Public Education ("FAPE").

55.     On December 20, 2023, the District and Parents reached a mediation agreement ("Agreement"), and Parents voluntarily withdrew their administrative complaint.

56.     The terms of the Agreement were as follows: (1) the District would collaborate with a certified dyslexia specialist when developing E.J.'s IEP and convene an IEP meeting on January 23, 2024; (2) E.J. would participate in winter benchmark testing; and (3) E.J. would participate in

Extended School Year ("ESY") over the 2024 summer break and receive instruction in her specific reading deficit areas from a teacher certified in the Orton-Gillingham approach, an evidence-based method specifically designed for students with dyslexia.

57. The Agreement also stated that Parents mentioned that they would be applying for the Education Scholarship Account ("ESA") voucher and/or seeking enrollment in the Western Line School District, which has a dyslexia therapist on staff.

58. The District did not hold an IEP meeting on January 23, 2024, as set forth in the Agreement, due to a delay in benchmark testing. The District re-scheduled an IEP meeting for February 23, 2024.

59. E.J.'s parents were unable to attend the meeting on February 23, 2024, and they requested a new meeting date.

60. Over Parents' objection, the District proceeded to develop an initial IEP for E.J.'s IEP without parental input.

61. On March 6, 2024, Parents requested that a dyslexia therapist attend a second IEP meeting to finalize E.J.'s IEP, but the District informed Parents that a dyslexia therapist would not attend the next meeting. As a result, the meeting was never scheduled.

<u>The 2024 Due Process Complaint</u>

62. On March 18, 2024, Parents filed the 2024 due process complaint before the Mississippi Department of Education.

63. The complaint alleged that the District violated E.J.'s rights under the IDEA with respect to appropriate services, appropriately trained staff, the development of E.J.'s IEP, parental participation, provisions on child identification, evaluation, and educational placement, and denied E.J. a Free Appropriate Public Education ("FAPE"). The due process complaint also alleged that

the District violated other federal and state laws regarding discrimination and breached the previous Agreement reached by the parties.

64. On August 5, 2024, the HO dismissed the 2024 due process complaint with prejudice.

The 2024-2025 IEP

65. On August 2, 2024, the IEP team convened to finalize E.J.'s IEP. The IEP went into effect on August 5, 2024.

66. The IEP indicates that E.J.'s dyslexia has had a significant impact on her reading and math achievement.

67. The IEP sets two reading and two math goals for E.J. One of the goals does not contain any baseline data, and the other three do not describe E.J.'s current rate of performance based on baseline data. Instead, they draw from the iReady testing platform's recommendations for "suggested next steps."

68. The only services E.J. receives are pull-out instruction 90 minutes weekly and inclusion services 45 minutes daily. These services are listed as "academic instruction" with no reference to specific interventions or methods of instruction.

69. Ms. Ezandra Washington, a special education teacher in the District, provides reading instruction to E.J. Upon information and belief, Ms. Washington has not received a certification in dyslexia therapy or training in the Orton-Gillingham method.

70. The IEP lists several accommodations, but does not provide support for E.J.'s general education teachers outside the English, Reading, and Math domains.

71. The IEP provides for progress monitoring every nine weeks. The District has not sent home goal sheets after the nine weeks.

11

72.    E.J.'s reading skills and abilities are well below her grade level as compared with her nondisabled peers.

73.    E.J. is not making sufficient progress on her IEP goals.

74.    E.J.'s IEP goals, services, and accommodations are not appropriate in light of her circumstances.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the Individuals with Disabilities Education Act

75.    Plaintiff repeats and realleges each and every allegation in the forgoing paragraphs as if fully set forth herein.

76.    E.J. is a child with a disability as defined by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401(3)(A).

77.    The District is a Local Educational Agency (LEA) as defined by the IDEA, 20 U.S.C. § 1401(19)(A).

78.    Plaintiff is a party aggrieved by the HO's Final Decision and Order within the meaning of 20 U.S.C. § 1415(i)(2)(A).

79.    The HO erred in dismissing Plaintiff's 2024 due process complaint with prejudice.

80.    The District is failing to provide E.J. with a Free Appropriate Public Education (FAPE), in violation of 20 U.S.C. § 1412(a)(1)(A).

81.    The District has repeatedly denied Parents an opportunity to fully participate in the development of E.J.'s IEP, in violation of 20 U.S.C. §§ 1414(d)(1); 1414(e); 1415(b)(1).

82.    The District is failing to allow Parents to participate in decision-making with respect to the educational placement of E.J., and the provision of a FAPE to E.J., and instead has

made predetermined, unilateral decisions on these important issues, in violation of 20 U.S.C. § 1415(b)(1).

83. The District is failing to provide measurable annual goals designed to meet E.J.'s needs and enable her to make progress in the general education curriculum, in violation of 20 U.S.C. § 1414(d)(1)(A)(i)(II). The baseline data is either nonexistent or incomplete, thereby making it impossible to establish measurable goals tailored to E.J.'s needs.

84. The District is failing to measure and provide periodic reports on the progress of E.J.'s IEP goals, in violation of 20 U.S.C.§ 1414(d)(1)(A)(i)(III).

85. The District is failing to provide E.J. with special education and supplementary aids and services, based on peer-review research to the extent practicable, in violation of 20 U.S.C. § 1414(d)(1)(A)(i)(IV).

86. The District violated child find by failing to timely locate, identify, and evaluate E.J. as a child with a disability, and failed to comply with eligibility requirements, in violation of 20 U.S.C. § 1412(a)(3) and § 1414(a)(1), (b), (c)(1)-(2).

87. The District's procedural and substantive violations have led to the denial of E.J.'s right to a FAPE, impeded Parents' ability to participate in the decision-making process regarding E.J., and caused a deprivation of E.J.'s educational benefits, as outlined in 20 U.S.C. § 1415(f)(3)(E)(ii).

88. The District is failing to comply with the Agreement reached between the parties on December 20, 2023, in violation 20 U.S.C. § 1415(e)(2)(F).

**SECOND CAUSE OF ACTION**
**Violation of Title II of the Americans with Disabilities Act**

89. Plaintiff repeats and realleges each and every allegation in the forgoing paragraphs as if fully set forth herein.

13

90.     E.J. is a qualified individual with a disability as defined by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2).

91.     The District is a public entity as defined by the ADA, 42 U.S.C. § 12131(1).

92.     E.J. is eligible to receive a public education in the District.

93.     The District is intentionally, and with deliberate indifference, excluding E.J. from participation in, and denying her the benefits of, the District's services, programs, or activities, and otherwise subjecting E.J. to discrimination, based on her disability, in violation of 42 U.S.C. § 12132.

94.     The District is excluding E.J. from participating in or denying her the benefits of public education, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130.

95.     The District is administering policies and practices that have the effect of excluding E.J. from participation in public education, denying her the benefits of public education, or otherwise subjecting her to discrimination on the basis of their disability, in violation of 28 C.F.R. § 35.130(b)(3)(i).

96.     The District is failing to modify its policies, procedures, and operational practices under circumstances where such modification is necessary and required, in violation of 28 C.F.R. § 35.130(b)(7).

97.     The District is failing to administer their services, programs, and activities in the most integrated setting appropriate to the needs of E.J., in violation of 28 C.F.R. § 35.130(d).

98.     The District is administering policies and practices that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the District's program with respect to E.J., in violation of 28 C.F.R. § 35.130(b)(3)(ii).

14

99. The District's conduct constitutes discrimination against E.J. by reason of her disabilities.

100. The District's conduct is continuous and ongoing, in violation of the ADA.

101. The District's conduct has caused E.J. harm, and this harm will continue.

**THIRD CAUSE OF ACTION**
**Violation of Section 504 of Rehabilitation Act**

102. Plaintiff repeats and realleges each and every allegation in the forgoing paragraphs as if fully set forth herein.

103. E.J. is an individual with a disability as defined by Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 705(20)(A).

104. The District receives federal financial assistance in the operation of its programs or activities as defined by Section 504, 29 U.S.C. § 794(b)(2)(B).

105. The District is failing to provide E.J. with a Free Appropriate Public Education, in violation of 34 C.F.R. § 104.33.

106. The District is excluding E.J. from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i).

107. The District is administering policies and practices that have the effect of excluding E.J. from participation in public education, denying her the benefits of public education, and subjecting her to discrimination on the basis of her disability. 34 C.F.R. § 104.4(b)(4)(i).

108. The District is administering policies and practices that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the District's program with respect to E.J., in violation of 34 C.F.R. § 104.4(b)(4)(ii).

109. The District's conduct constitutes discrimination against E.J. because of her disabilities.

110. The District's conduct constitutes continuous and ongoing violations of Section 504 against E.J.

111. The District's conduct has caused educational and actual harm to E.J., and this harm will continue.

**FOURTH CAUSE OF ACTION**
**Violations of Section 504 and the ADA – Retaliation**

112. Plaintiff repeats and realleges each and every allegation in the forgoing paragraphs as if fully set forth herein.

113. Both Section 504 and the ADA prohibit retaliation against individuals for their opposition to practices made unlawful by the statutes, or because they seek to enforce rights created by the statutes.

114. Parents can properly bring a retaliation claim under both statutes when they are asserting and enforcing the rights of their disabled child.

115. Here, Parents requested the District provide services and accommodations for E.J.'s disability. This advocacy is protected conduct under Section 504 and the ADA.

116. In the months that followed, the District retaliated against Parents by shutting them out of the special education process and bringing a lawsuit against Mr. Gibson seeking to bar him from advocating for E.J. during the administrative due process hearing.

117. The District's conduct constitutes retaliation against Parents because of their advocacy on behalf of E.J, in violation of 29 U.S.C. § 794, 34 C.F.R. § 104.61, and 42 U.S.C. § 12203, respectively.

118. The District's retaliation against Parents caused actual harm to them; and this harm will continue.

**FIFTH CAUSE OF ACTION**
**Violations of Mississippi Dyslexia Laws**

119. Plaintiff repeats and realleges each and every allegation in the forgoing paragraphs as if fully set forth herein.

120. The District violated state law by failing to evaluate E.J. for special education services or a 504 Plan after receiving information regarding her dyslexia diagnosis. Miss. Code Ann. § 37-173-16(1). Mississippi Code Annotated Section 37-173-16(1) requires each local school district "to make an initial determination of whether a student diagnosed with dyslexia meets the eligibility criteria under the Individuals with Disabilities Education Act (IDEA) to have an Individualized Education Program developed and to receive services. If a student's diagnosis of dyslexia does not result in an IDEA eligibility determination, then the district must proceed with their process for determining if the student is eligible for a 504 Plan under the Rehabilitation Act based on the presumption that proficiency in spelling, reading and writing are essential for the student to achieve appropriate educational progress." *Id.*

121. The District further violated Section 37-173-16(1) of the Mississippi Code by failing to provide any services or accommodations for E.J.'s dyslexia, as the law mandates that "each local school district shall develop interventions and strategies to address the needs of those students diagnosed with dyslexia which provide the necessary accommodations to enable the student to achieve appropriate educational progress." Miss. Code Ann. § 37-173-16(1).

122. Finally, the District violated state law by failing to accept "the resulting diagnosis of the subsequent evaluation" following E.J.'s failed dyslexia screener. Miss. Code Ann. § 37-173-15(1)(d). Acceptance by the school district of subsequent dyslexia evaluation is mandatory "for purposes of determining eligibility for placement within a dyslexia therapy program" within the District or outside of the District. *Id.*

123. The District is failing to provide E.J. with a Free Appropriate Public Education, in violation of 34 C.F.R. § 104.33.

124. The District is excluding E.J. from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i).

125. The District is administering policies and practices that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the District's program with respect to E.J., in violation of 34 C.F.R. § 104.4(b)(4)(ii).

126. The District's conduct constitutes continuous and ongoing violations of Miss. Code Ann. § 371-1-15(1)(d) and Miss. Code Ann. § 371-1-16(1) against E.J.

127. The District's conduct has caused educational and actual harm to E.J., and this harm will continue.

128. And as a result of this conduct, based on its violations of state law, the District acted with actual malice and gross negligence which evidences a willful, wanton, or reckless disregard for E.J.'s safety and well-being and warrants punitive damages pursuant to Mississippi Code Annotated Section 11-1-65.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Accept jurisdiction of this action;

B. Vacate the HO's Final Decision and Order as legally erroneous;

C. Take additional evidence as the Court deems necessary and proper and allow all of the claims to be adjudicated as part of this single action;

D. Declare that the District's actions violate the IDEA by denying E.J. her procedural and substantive rights, including her right to a Free Appropriate Public Education (FAPE);

E. Declare that the District has violated the mediation agreement reached between the parties on December 20, 2023;

F. Order the District to provide and/or fund compensatory educational services that would place E.J. in the position she would have been but for the District's denial of FAPE;

G. Order the District to develop an appropriate IEP with targeted, measurable goals tailored to E.J.'s needs, to allow her to obtain a FAPE moving forward;

H. Order the District to provide and/or fund prospective educational services to ensure E.J. receives a FAPE;

I. Declare that the District's actions violate the ADA and Section 504 by denying E.J. meaningful access to educational benefits, and otherwise discriminates against E.J., based on her disability;

J. Declare that the District's actions violate the ADA and Section 504 by retaliating against Parents for advocating on behalf of E.J. and her educational rights;

K. Award Plaintiffs nominal and actual monetary damages as well as punitive damages;

L. Award Plaintiffs reasonable attorneys' fees, costs, and expenses incurred; and

M. Order and direct any and all other relief as this Court deems proper.

Dated: October 31, 2024

Respectfully submitted,

**SOUTHERN POVERTY LAW CENTER**

By:        __/s/ *Julian D. Miller*_____

**JULIAN D. MILLER, MSB #104377**
**G.C. BARNETT, MSB # 102632**
**EUGENE CHOI, Ga. Bar No. 121626 (Pro hac vice forthcoming)**
SOUTHERN POVERTY LAW CENTER
111 EAST CAPITOL STREET, SUITE 280
JACKSON, MS 39201-2375

19

TELEPHONE: (601) 874-4084
FACSIMILE: (601) 948-8885
Julian.Miller@splcenter.org
Gian.Barnett@splcenter.org

**LILY MOENS, MSB # 106674**
MISSISSIPPI CENTER FOR JUSTICE
210 East Capitol Street, Suite 1800
Jackson, MS 39202
Telephone: (601) 709-2141
Facsimile: (601) 352-4769
lmoens@mscenterforjustice.org

**ATTORNEYS FOR PLAINTIFFS CARMELLE JAMISON and TERRELL GIBSON, as Next Friend of E.J., a Minor**

20