IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CARMELLE JAMISON and
TERRELL GIBSON, as Next
Friend of E.J., a minor                                          PLAINTIFFS

v.                                                    Civil No. 4:24-cv-103-GHD-RP

GREENVILLE PUBLIC SCHOOL
DISTRICT                                                        DEFENDANTS

## OPINION

Presently before the Court is Defendant Greenville Public School District's ("Defendant" or "the District") Motion to Dismiss [Doc. No. 47] seeking dismissal of Plaintiffs Carmelle Jamison and Terrell Gibson, as next friend of minor child, E.J.'s ("Plaintiffs") claims against it. Plaintiffs assert Defendant violated the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act"), and Mississippi's dyslexia laws. With due consideration, the Court finds Defendant's Motion [47] should be granted for the reasons set forth in this opinion.

### *I.   Background*

Plaintiff E.J. is an eleven-year-old child diagnosed with dyslexia who was first enrolled at a school in the Greenville Public School District at three years old.[1] She resides with her biological mother, Carmelle Jamison, and her "stepfather,"[2] Terrell Gibson, who has resided in their home since 2020. On April 8 and September 23, 2019, the District allegedly conducted two dyslexia

---

[1] As required under Rule 12(b)(6) all background information comes from the Complaint [1] unless otherwise noted.

[2] The Court uses "stepfather" due to Plaintiffs' use of that label; however, the use of this label changes nothing regarding this Court's standing analysis below.

screenings on E.J. which she failed. Despite this, Plaintiffs contend "the District failed to refer E.J. for an evaluation to determine eligibility for special education services."

Then, on March 3, 2020, Plaintiffs had E.J. "privately evaluated" at Children's of Mississippi, University of Mississippi Medical Center ("UMMC") which showed many of E.J.'s "academic skills . . . were significantly depressed and consistent with a diagnosis of dyslexia." That same year, on September 20, 2020, Plaintiffs withdrew E.J. from the District and enrolled her in a private school where she allegedly continued to struggle due to the private school's inability to address E.J.'s dyslexia. E.J. returned to the District approximately a year later on September 13, 2023, at which time Plaintiffs asked the District to "evaluate E.J. for special education services" and provided the District with the UMMC evaluation. The District found the UMMC evaluation outdated, and conducted its own "speech/language assessment on E.J." on September 15, 2023, which allegedly "showed that E.J. scored below average in the areas of oral expression and listening comprehension."

Five days later,[3] the District psychologist, Dr. Linda Washington, allegedly told Plaintiffs "she disagreed with E.J.'s dyslexia diagnosis and believed that E.J. just needed more time to complete assignments and better organizational strategies." Disagreeing, Plaintiffs contacted the Mississippi Department of Education's Parent Engagement Director who allegedly assured them "the District would consider E.J.'s dyslexia diagnosis during its evaluation process." The District subsequently conducted an "academic assessment" on E.J., allegedly finding she was in the "'Very High'" range for risk of dyslexia" and a "social emotional assessment" which allegedly showed "E.J.'s academic deficits were due to Attention/deficit/hyperactivity disorder ("ADHD")." Plaintiffs contend neither report mentioned E.J.'s dyslexia diagnosis, and the school psychologist

---

[3] The Complaint [1] actually states this occurred on September 20, 2024, but the Court assumes this is a typographical error with the correct date being September 20, 2023.

2

failed to "conduct a complete psychological evaluation." They then met with the District on November 3, 2023, to discuss these results, and allegedly learned the "Multi-disciplinary Evaluation Team determined that E.J. was eligible to receive special education and related services."

Plaintiffs filed the first of three administrative due process complaints against the District with the Mississippi Department of Education's Office of Special Education on November 20, 2023, "for failing to consider E.J.'s dyslexia diagnosis when determining her eligibility and her special education services, violating provisions on child identification, evaluation, and educational placement, and denying E.J. a Free Appropriate Public Education ("FAPE")." The parties reached a mediation agreement on December 20, 2023, and Plaintiffs withdrew their complaint. At a later date, a scheduling and substantive dispute arose over a meeting between the District and Plaintiffs concerning E.J.'s Individual Education Program ("IEP"), resulting in Plaintiffs filing a second administrative due process complaint on March 18, 2024.

The second due process complaint alleged the District violated "E.J.'s rights under the IDEA . . . [,] denied E.J. a [FAPE,] . . . violated other federal and state laws regarding discrimination[,] and breeched the previous [mediation agreement] reached by the parties." The District sought to dismiss this second due process complaint, arguing Mr. Gibson lacked standing, but the administrative hearing officer denied it. The District then filed a "Petition for Preliminary and Permanent Injunctive Relief to prevent the enforcement of a subpoena issued to the school district's legal counsel on July 30, 2024, in Washington County Chancery Court" while simultaneously requesting "a stay" of the due process hearing set for August 14, 2024." Plaintiffs also requested a stay, but the hearing officer "issued a Final Decision and Order" on August 5, 2024, "ruling . . . [the] complaint [was] 'DISMISSED WITH PREJUDICE.'" Plaintiffs make clear

3

in this action's Complaint [1], "The [hearing officer's] Decision and Order fails to make specific findings of fact, conclusions of law, or provide specific reasoning for its ruling." It is this decision which Plaintiffs now appeal to this Court.

## *II.  Standard of Review*

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

That is, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative

4

level.'" *Emesowum v. Houston Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570).

As for Rule 12(b)(1), motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming*, 281 F.3d at 161. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

### III. *Analysis and Discussion*

The Court begins with Terrell Gibson's standing and then turns to the more substantive material starting with the federal claims and then turning to the state law claims.

#### A. Terrell Gibson's Standing

Regarding Mr. Gibson's standing, the parties dispute whether he qualifies as a parent under the IDEA. Ms. Jamison's standing is undisputed, but Plaintiffs provide no evidence to support any biological or legal ties between Mr. Gibson and E.J. The IDEA defines "parent" in relevant part as (1) "a natural, adoptive, or foster parent of a child;" (2) "a guardian;" or (3) "an individual acting in the place of a natural or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare." 20 U.S.C. § 1401(23)(A)-(C); see also, 34 C.F.R. § 300.30(a). Plaintiffs argue Mr. Gibson meets the

third definition because "[h]e has lived with E.J. and raised her since she was six years old;" "provided for her financially, emotionally, and educationally;" and "actively supported her through the IEP process" [58]. Plaintiffs cite no case law to support these facts have any bearing on the standing analysis and whether it encourages a finding Mr. Gibson is a parent under the IDEA. Defendant, however, cites Regulation 300.30(b)(1):

> the *biological parent* or adoptive parent, when attempting to act as the parent under this part and when more than one party is qualified under paragraph (a) of this section to act as a parent, *must be presumed to be the parent for purposes of this section* unless the biological or adoptive parent does not have legal authority to make educational decisions for the child.

34 C.F.R. § 300.30(b)(1) (emphasis added). Therefore, Defendants argue, even if Mr. Gibson could be considered a parent under 34 C.F.R. § 300.30(a), Ms. Jamison is E.J.'s *biological* mother and is the *presumed parent* for IDEA purposes. In support of this reasoning, Defendant turns to legislative history:

> Section 300.30(b) was added to assist schools and public agencies in determining the *appropriate person* to serve as the parent . . . in those difficult situations [when] *more than one individual* is 'attempting to act as a parent' and make educational decisions for a child. It *recognizes the priority of the biological or adoptive parent* and the authority of the courts to make decisions, and does not leave these decisions to school administrators.

U.S. Dep't of Educ., *Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children with Disabilities*, 71 F.R. 46540-01, 2006 WL 2332118, at *46566 (Aug. 14, 2006) (emphasis added). Thus, regardless whether Mr. Gibson is classified as a parent under the IDEA, Ms. Jamison is the presumed parent under the statute. This, along with Defendant's failure to provide this Court with any precedential or valid factual authority in support of Mr. Gibson's standing, shows the Court Mr. Gibson lacks standing to bring these federal claims on E.J.'s behalf.

Additionally, Plaintiffs point to a federal judge's reference to Mr. Gibson in a separate case as E.J.'s "stepfather" and parent, and they reference the first due process proceeding's settlement agreement in which Defendant "acknowledged [Mr. Gibson's] parental status" [*Id.*]. *Greenville Pub. Sch. Dist. v. Jamison, in the Int of E.J.*, No. 4:24-cv-00082-MPM-JMV, 2025 WL 1160616 (N.D. Miss. Apr. 21, 2025) (dismissing the case as moot). The Court agrees with Defendant's interpretation of these references: neither the hearing officer nor the federal court made any findings of fact or law, and these were merely colloquial references with no binding authority on this Court regarding Mr. Gibson's standing.

### B. Failure to Exhaust Administrative Remedies

The Court now considers whether Plaintiffs exhausted their administrative remedies under the IDEA. "Exhaustion requires more than pleading a claim, . . . it requires 'findings and decision' by the administrative body." *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017) (citing 20 U.S.C. § 1415(g)); see also, 20 U.S.C. § 1415(l) ("the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter"). Regarding Plaintiffs' first due process complaint filed on November 30, 2023, it did not satisfy § 1415(l)'s exhaustion requirement because the parties reached a "mediation agreement" and "voluntarily withdrew" their due process complaint. See, *e.g.*, *Chavez v. Brownsville Indep. Sch. Dist.*, No. 22-40085, 2023 WL 3918987, at *1 (5th Cir. June 9, 2023) (finding a settlement agreement did not exhaust administrative remedies on IDEA equitable relief). As for the second, March 18, 2024, due process complaint, it also fails to satisfy § 1415(l)'s exhaustion requirement. There, the hearing officer did issue a Decision and Order [1-1], but Plaintiffs admit "the Decision and Order fails to make specific findings of fact, conclusions of law, or provide specific reasoning for its ruling" [1]. Defendant agrees with that sentiment. Plaintiffs

7

argue, however, despite the hearing officer not making those findings or a decision, "a dismissal with prejudice is still a final judgment on the merits." While this may be true for most cases, that is not the IDEA's standard; it requires "'findings and [a] decision' by the administrative body." *Reyes*, 850 F.3d at 256. Plaintiffs and Defendant do not dispute the hearing officer failed to make those findings or a decision; therefore, Plaintiffs have not exhausted their administrative remedies under the IDEA.

### C. ADA and Rehabilitation Act Claims

Plaintiffs also allege violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and retaliation under both those statutes. "Section 1415(l) provides that students bringing claims under other disability laws, like the ADA and Rehabilitation Act, must first exhaust the IDEA's administrative remedies if their claims seek *relief that is also available* under the IDEA." *Elizabeth S.G. v. Dallas Indep. Sch. Dist.*, No. 21-10849, 2022 WL 6316442, at *1 (5th Cir. Oct. 7, 2022) (citing 20 U.S.C. § 1415(l)) (cleaned up) (emphasis added). "Whether a plaintiff's non-IDEA claims are subject to § 1415(l) exhaustion 'hinges on whether [he] seeks relief for the denial of a FAPE' since this is the only 'relief' the IDEA provides." *Id.* (quoting *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 168 (2017)). Therefore, this Court "must look to the 'substance' of the plaintiff's claims to see whether the 'gravamen of [the] complaint seeks redress for a school's failure to provide a FAPE." *Id.*

To accomplish this, the Supreme Court provides a two-question inquiry:

First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theatre or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Id.* (citing *Fry*, 580 U.S. at 171). The Complaint [1] clearly states Plaintiffs are suing Defendant for failing to provide E.J. with a FAPE and then justify their Section 504 and ADA claims by

8

alleging Defendant "denied E.J. her right to meaningfully access *an appropriate education* based on her disability" [1, p. 2 (emphasis added)]. Therefore, both the above questions are answered in the negative, and the Complaint [1] "concerns the denial of a FAPE" rather than a "disability-based discrimination." *Fry*, 580 U.S. at 171. The IDEA exhaustion requirement then also applies to Plaintiffs' Section 504 and ADA claims, but the analysis does not stop there.

*Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023), requires this Court consider the relief sought in Plaintiffs' Complaint [1]. Specifically, the Supreme Court held the IDEA's "administrative exhaustion requirement applies only to suits that 'seek relief also available under' IDEA." *Id.* at 147 (cleaned up). This, in essence, creates a narrow exception to the *Fry* test listed above. Plaintiffs seek compensatory and punitive damages under the ADA and Rehabilitation Act, neither of which are available under the IDEA. The equitable relief they seek, however, is barred by the IDEA's exhaustion requirement; therefore, the Court only considers the validity of any potential compensatory or punitive damages moving forward. Further, the only compensatory relief Plaintiffs seek is better classified as compensatory education, a relief available under the IDEA; therefore, the Court finds the compensatory relief is barred. The only remaining issue concerns punitive damages, relief not available under the IDEA. *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983).

### D. Punitive Damages under ADA and Rehabilitation Act

The Court now considers Plaintiffs' ADA and Rehabilitation Act claims on the merits for Rule 12(b)(6) purposes. With the Rule 12(b)(6) standard in mind, "[a] district court reviewing a state hearing officer's decision in a due process hearing must accord due weight to the hearing officer's findings but must reach an independent decision based on a preponderance of the evidence;" that is, "[t]he district court's review is essentially de novo." *J.V. v. Brownsville Indep.*

*Sch. Dist.*, No. 1:18-cv-008, 2020 WL 3415747, at *3 (S.D. Tex. June 22, 2020) (citing *Houston Indep. Scho. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000), *cert. denied*, 531 U.S. 817 (2000)). It is already established, however, the hearing officer made no actual findings; therefore, the Court need not accord weight to his decision.

Title II of the Americans with Disabilities Act ("ADA") mandates "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act of 1973 ("§ 504") provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794. To state a claim under either the ADA or the Rehabilitation Act, a plaintiff must show:

> (1) that he is a qualified individual . . . ; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (quoting *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021)). What is more, "[p]laintiffs can only recover damages under the ADA or § 504 upon a showing of *intentional* discrimination." *Id.* (emphasis added). The "intentionality requirement . . . require[s] something more than deliberate indifference." *Id.* at 450 (quoting *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020)) (internal quotation marks and other citations omitted). More specific to the case at hand, "[i]ntentional-discrimination liability requires

10

proof that the school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *R.W. v. Clear Creek Indep. Sch. Dist.*, No. 24-40141, 2025 WL 801360, at *4 (5th Cir. March 13, 2025) (quoting *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017)) (internal quotation marks and other citations omitted).

Plaintiffs at least allege E.J. is an ADA and § 504 qualified individual with dyslexia, that Defendant—a public entity—is excluding her from or denying her benefits, and that such exclusion or denial is by reason of her disability. However, it is clear from the Complaint [1] Plaintiffs failed to allege enough factual proof to show Defendant "*refused* to provide [E.J. with] reasonable accommodations." *Clear Creek*, 2025 WL 801360, at *4 (emphasis added). Instead, they acknowledge Defendants created and used an IEP for E.J., provided her with "pull-out instruction 90 minutes weekly and inclusion services 45 minutes daily," and gave her reading instruction with a "special education teacher." [1, p. 11]. This does not give the impression Defendants *refused* to provide E.J. with reasonable accommodations; therefore, Plaintiffs fail to meet the intentionality requirement. As a result, and considering *Perez*, Plaintiffs failed to plausibly plead they are entitled to punitive damages under the ADA and Rehabilitation Act.

### E. Retaliation

Plaintiffs also allege retaliation pursuant to the ADA and the Rehabilitation Act. "Both the ADA and the [Rehabilitation Act] protect individuals from retaliation," but "plaintiff[s] claiming retaliation . . . must demonstrate three elements: (1) [they] engaged in a protected activity; (2) [they] suffered an adverse action; and (3) there is a causal connection between the two." *Wilson v. City of Southlake*, Civ. Action No. 4:16-cv-0057, 2021 WL 4936251, at *11 (N.D. Tex. July 9, 2021) (citing 42 U.S.C. § 12203; 29 C.F.R. § 1614.101(b); *McDowell v. Home Depot USA, Inc.*,

11

F. App'x 168, 170 (5th Cir. 2005)). Plaintiffs' Complaint [1] clearly shows they participated in protected activity by filing their due process complaints on E.J.'s behalf; thus, element one is met.

To support element two, Plaintiffs allege they suffered adverse actions when Defendant shut "them out of the special education process" and brought "a lawsuit against Mr. Gibson seeking to bar him from advocating for E.J. during the administrative due process hearing" [1]. Neither of these convince the Court Plaintiffs satisfy the second element because these allegations do not "amount to an act (or acts) that would materially affect the student as to [her] status or are sufficiently severe so as to deter a reasonable individual's advocacy efforts." *King v. Academy of America*, No. 3:24-cv-903, 2024 WL 2946136, at *6 (N.D. Tex. May 6, 2024) (quoting *Smith ex rel. C.R.S. v. Tangipahoa Par. Sch. Bd.*, Civ. Action No. 05-6648, 2006 WL 3395938, at *13 (E.D. La. Nov. 22, 2006)) (cleaned up). Defendants had the right to seek Mr. Gibson's dismissal during the administrative due process hearing, so the Court cannot attribute that as a wrongdoing. As for the "shutting out" allegation, similar cases with more severe alleged "adverse actions" have failed under the second element. *King*, 2006 WL 3395938, at *6 (recommending dismissal of complaint under Rule 12(b)(6) standard despite school cancelling parent-teacher meeting, giving son less play time, teacher telling son "that he would slap the smile off his face," and staff member calling son remedial). Plaintiffs' allegations are not severe enough to deter a reasonable individual's advocacy efforts, and indeed, it did not deter Plaintiffs in this case. Therefore, Plaintiffs' fail to satisfy element two, and their retaliation claim is not plausibly pled.

### F. State Law Claims

Regarding Plaintiffs' state law claims brought under Mississippi's dyslexia laws, Miss. Code Ann. § 37-173-16(1) and Miss. Code Ann. § 37-173-15(1)(d), this Court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c)(3) due to the Court's

dismissal of all claims over which it has original jurisdiction. See, *e.g.*, *Miller v. Dunn*, No. 24-10668, 2025 WL 32818, at *2 (5th Cir. Jan. 6, 2025) (citing *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 601-02 (5th Cir. 2009)) (recognizing the "general rule . . . that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.").

### *IV. Conclusion*

For the reasons set forth above, Plaintiffs' claims are not facially plausible and are below the speculative level required to survive dismissal under Rule 12(b)(6). The Court therefore finds Defendant Greenville Public School District's Motion to Dismiss [47] should be granted.

An order in accordance with this opinion shall issue this day.

THIS, the 4th day of March, 2026.

_____
SENIOR U.S. DISTRICT JUDGE